1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10                              ----oo0oo----

11

12   BERTA ALICIA LUJANO GONZALEZ,        No. 2:20-cv-1262 WBS JDP
     JOSE LUIS SALAZAR JARAMILLO
13
                    Plaintiffs,
14                                         ORDER RE: DEFENDANTS' MOTION
          v.                               TO DISMISS
15
     UNITED STATES DEPARTMENT OF
16   HOMELAND SECURITY, UNITED STATES
     CITIZENSHIP AND IMMIGRATION
17   SERVICES, CHAD F. WOLF, Acting
     Secretary of United States
18   Department of Homeland Security,
     and KENNETH T. CUCCINELLI,
19   Senior Official Performing the
     Duties of the Director, USCIS,
20
                    Defendants.
21

22                              ----oo0oo----

23        Plaintiffs Berta Alicia Lujano Gonzalez and Jose Luis

24   Salazar Jaramillo brought this action against the United States

25   Department of Homeland Security ("DHS"), the United States

26   Citizenship and Immigration Service ("USCIS"), Chad Wolf, Acting

27   DHS Secretary, and Kenneth Cuccinelli, Senior Official Performing

28
                                     1

1  the Duties of the Director, USCIS, (collectively "defendants")

2  alleging unlawful delays in the processing of their requests for

3  nonimmigrant classification and work authorization.  Defendants

4  have moved to dismiss plaintiffs' claims under Federal Rules of

5  Civil Procedure 12(b)(1) and 12(b)(6).  (See Defs.' Mot. to

6  Dismiss (Docket No. 14).)

7  I.   Legal Standard

8       A.   Failure to State a Claim

9            Federal Rule of Civil Procedure 12(b)(6) allows for

10  dismissal when the plaintiff's complaint fails to state a claim

11  upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The

12  inquiry before the court is whether, accepting the allegations in

13  the complaint as true and drawing all reasonable inferences in

14  the plaintiff's favor, the complaint has stated "a claim to

15  relief that is plausible on its face."  Bell Atl. Corp. v.

16  Twombly, 550 U.S. 544, 570 (2007).  "The plausibility standard is

17  not akin to a 'probability requirement,' but it asks for more

18  than a sheer possibility that a defendant has acted unlawfully."

19  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare

20  recitals of the elements of a cause of action, supported by mere

21  conclusory statements, do not suffice."  Id.

22       B.   Lack of Subject Matter Jurisdiction

23            Dismissal under Rule 12(b)(1) for lack of subject

24  matter jurisdiction is appropriate if the complaint, considered

25  in its entirety, fails to allege facts on its face that are

26  sufficient to establish subject matter jurisdiction.  In re

27  Dynamic Random Access Memory (DRAM) Antitrust Litig., 546 F.3d

28  981, 984-85 (9th Cir. 2008).  A defendant can challenge subject

matter jurisdiction in one of two ways--through a facial attack
or a factual attack.  A facial attack "accepts the truth of the
plaintiff's allegations but asserts that they are 'insufficient
on their face to invoke federal jurisdiction.'"  Leite v. Crane
Co., 749 F.3d 1117, 1121 (9th Cir. 2014).  A factual attack
"contests the truth of the plaintiff's factual allegations,
usually by introducing evidence outside the pleadings."  Id.
"The plaintiff bears the burden of proving by a preponderance of
the evidence that each of the requirements for subject-matter
jurisdiction has been met."  Id.

II.  Factual Background and Relevant Allegations

        This case arises out of defendants' delay in
responding to plaintiffs' applications for "U Nonimmigrant
Status" and employment authorization in October 2016.  (See
generally First Amended Compl. ("FAC") (Docket No. 9).)  Federal
question jurisdiction under 28 U.S.C. § 1331 is predicated upon
the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

        A.   The "U Visa" Program

        In October 2000, as part of the Victims of Trafficking
and Violence Protection Act of 2000 ("VTVPA"), Pub. L. 106-386,
114 Stat. 1464, Congress created the U nonimmigrant
classification (the "U visa").  See 8 U.S.C. § 1101(a)(15)(U).
An individual is eligible for a U visa if USCIS determines that
the individual (1) is a victim of a qualifying crime committed in
the United States; (2) has suffered physical or mental abuse as a
result; (3) has credible or reliable information about the crime;
(4) has been, is being, or is likely to be helpful to law
enforcement in investigating or prosecuting the crime; and (5) is

3

admissible to the United States.  8 U.S.C. § 1182(a); 8 C.F.R. §§ 214.14(b), 214.14(c), 214.1(a)(3)(i).

An individual may apply for a U visa using a "Form I-918" petition.  8 U.S.C. § 1101(a)(15)(U).  Upon approval by USCIS, the petitioner receives lawful U-1 nonimmigration status and employment authorization for four years.  8 U.S.C. § 1184(p)(6).  He or she may also petition for certain qualifying relatives.  8 U.S.C. § 1101(a)(15)(U)(ii).

B.   The Regulatory Waitlist

The number of aliens who may be issued a U visa in the United States is limited by statute to 10,000 per year.  See 8 U.S.C. § 1184(p)(2)(A).  USCIS has enacted rules establishing a regulatory waitlist process for petitions that would be approvable but for the fact that the annual statutory cap had already been met.  See 8 C.F.R. § 214.14(d)(2).  Submission of a petition does not automatically place a petitioner on the regulatory waitlist; USCIS must first determine that the petition submitted would be approvable in all respects.  See id.  Part of this process involves verifying that the petitioner has submitted a required certification from a "Federal, State, or local law enforcement official, prosecutor, judge, or other Federal, State, or local authority investigating criminal activity" stating that the petitioner "has been helpful, is being helpful, or is likely to be helpful" to the authority in investigating a qualifying crime.  See 8 U.S.C. §§ 1101(a)(15)(U)(i)(III)-(IV); 8 U.S.C. § 1184(p)(1).

Once USCIS determines that a petition is grantable in all respects, the petitioner "must be placed on [the] waiting

list and receive written notice of such placement."  8 C.F.R. §

214.14(d)(2).  However, no statute or regulation requires USCIS

to determine whether a petition is eligible for placement on the

regulatory waitlist within a specified period of time or in any

particular order.  USCIS regulations merely require that

"[p]riority on the waiting list . . . be determined by the date

the petition was filed with the oldest petitions receiving the

highest priority."  Id.

        When USCIS places a petition on the regulatory

waitlist, the petitioner and his or her qualifying family members

receive "deferred action" (a discretionary determination by the

federal government to defer a removal action of the petitioner

and qualifying family members), provided they are in the United

States.  Id.

        C.   U-Related Employment Authorization

        Non-citizens are only lawfully permitted to work in the

United States if they are lawfully admitted for permanent

residence or otherwise authorized to be employed.  8 U.S.C. §

1324a; 8 C.F.R. § 274a.12.  USCIS is required by statute to grant

work authorization in the form of "employment authorization

documents" to petitioners who receive a U visa.  See 8 U.S.C. §

1184(p)(3)(B).  Additionally, the Secretary of Homeland Security

"may grant work authorization to any alien who has a pending,

bona fide application for [a U visa]."  8 U.S.C. § 1184(p)(6).

Petitioners may receive employment authorization documents once

they have been placed on the waitlist, but USCIS regulations

leave this decision to the agency's discretion.  See 8 C.F.R. §

214.14(d)(2) ("USCIS, in its discretion, may authorize employment

for such petitioners [who are placed on the waitlist] and qualifying family members.").

Under the USCIS regulations, petitioners for a U visa do not need to submit a separate request or fill out separate paperwork to obtain work authorization, because the Form I-918 petition contains a box petitioners can check to indicate they are also seeking work authorization and thus "serves the dual purpose of requesting U nonimmigrant status and . . . employment authorization."  New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status, 72 Fed. Reg. 53,014, 53,029 (Sep. 17, 2007).  U visa petitioners placed on the waitlist are also eligible for employment authorization based on the fact that they have been granted deferred action, but they must apply separately to receive employment authorization documents.  8 C.F.R. § 274a.12(c)(14); 8 C.F.R. § 1.2; 8 C.F.R. § 103.2(a)(1).

        D.    The 90-Day Adjudication Timeframe and Interim Employment Authorizations

Former 8 C.F.R. § 274a.13(d) required USCIS to adjudicate applications for work authorization within 90 days.  See 8 C.F.R. § 274a.13(d) (2016).  If the application for work authorization was not adjudicated within 90 days of USCIS' receipt, the regulation called for USCIS to grant interim employment authorization documents that expire after a period of no greater than 240 days.  See id.

Effective January 17, 2017, however, the 90-day processing deadline and authorization to issue interim employment authorization documents were eliminated via rulemaking.  See 81

Fed. Reg. 82398 (Nov. 18, 2016) ("Final Rule").  As a result of the Final Rule, 8 C.F.R. § 274a.13(d) no longer requires that USCIS adjudicate work authorization applications within 90 days, and no longer authorizes the agency to issue interim employment authorization documents.

> E.   <u>Plaintiffs' Claims</u>

Plaintiffs submitted I-918 petitions to obtain U visas and work authorization in October 2016, along with required certifications verifying that they had in fact been victims of a qualifying crime and had or were likely to be helpful to law enforcement authorities in investigating the crime.  (FAC ¶¶ 48-54.)  Plaintiffs submitted their petitions before the amendments to 8 C.F.R. § 274a.13(d), which removed USCIS' 90-day processing deadline, went into effect in January 2017.  (<u>See</u> <u>id.</u>)  To date, USCIS has not issued a decision as to whether to place plaintiffs on the regulatory waitlist, grant deferred action, or issue employment authorization documents.  (<u>Id.</u>)

Plaintiffs allege that USCIS has unreasonably delayed in processing their I-918 petitions, "as Plaintiff believes (and Defendants can confirm) other applicants who have filed their I-918 applications after theirs were filed have already been placed on the waitlist or have been issued employment authorization documents and/or granted deferred action status by USCIS."  (<u>See</u> FAC ¶¶ 55-56.)  Plaintiffs further allege that USCIS has issued fewer waitlist determinations each year since 2018, despite an increase in U visa applications being filed.  (<u>See</u> FAC ¶ 57.)

Plaintiffs filed this lawsuit in June 2020, approximately 44 months after submitting their I-918 petitions.

(See Docket No. 1.)   Plaintiffs' First Amended Complaint sets forth five claims for relief, styled as "Causes of Action."   (See FAC ¶¶ 61-170.)   In the **First Cause of Action**, plaintiffs claim that defendants violated APA § 706(1) by unreasonably delaying or unlawfully withholding a decision on plaintiffs' requests for work authorization under 8 U.S.C. § 1184(p)(6) and 8 C.F.R. § 274a.12(c)(14).   (See FAC ¶¶ 61-85.)   In the **Second Cause of Action**, plaintiffs claim that defendants violated APA § 706(1) by unreasonably delaying or unlawfully withholding a decision on plaintiffs' requests for work authorization under the version of 8 C.F.R. § 274a.13(d) in effect when plaintiffs submitted their petitions by failing to adjudicate their requests for work authorization within 90 days and by failing to issue interim employment authorization documents.   (See FAC ¶¶ 86-102.)   In the **Third Cause of Action**, plaintiffs claim that defendants violated the APA, 5 U.S.C. § 555(b), § 706(1) by unreasonably delaying or unlawfully withholding a determination as to whether plaintiffs belong on the regulatory waitlist for a U visa.   (See FAC ¶¶ 103-55.)   In the **Fourth Cause of Action**, plaintiffs claim that defendants violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(6)(A)(i), by withholding documents requested by plaintiffs that make up their alien registration files.   (See FAC ¶¶ 156-64.)   In the **Fifth Cause of Action**, plaintiffs claim they are entitled to attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504; 28 U.S.C. § 2412.   (See FAC ¶¶ 164-70.)

III. Discussion

     A.   **First Cause of Action**

          Section 1184(p)(6) states that "[t]he Secretary may

1  grant work authorization to any alien who has a pending, bona

2  fide application for nonimmigrant status under section

3  1101(a)(15)(U) of this title."  8 U.S.C. § 1184(p)(6).

4  Defendants contend that the APA and the Immigration and

5  Nationality Act ("INA") deprive the court of jurisdiction to hear

6  plaintiff's claim that they have unlawfully withheld or

7  unreasonably delayed issuing a decision under the statute because

8  their decision whether to issue employment authorization

9  documents under the statute is purely discretionary.  (See Defs.'

10  Mot. to Dismiss at 15-17.)  The court agrees.

11  Although section 706(1) of the APA states that a

12  "reviewing court shall compel agency action unlawfully withheld

13  or unreasonably delayed," 5 U.S.C. § 706(1), section 701 limits

14  judicial review of agency action when "(1) statutes preclude

15  judicial review; or (2) agency action is committed to agency

16  discretion by law." 5 U.S.C. § 701(a).  "[A] claim under

17  § 706(1) can proceed only where a plaintiff asserts that an

18  agency failed to take a discrete agency action that it is

19  required to take." Norton v. S. Utah Wilderness Alliance, 542

20  U.S. 55, 64 (2004) (emphasis in original).

21  Similarly, the INA states that "no court shall have

22  jurisdiction to review any other decision or action of . . . the

23  Secretary of Homeland Security the authority for which is

24  specified under this subchapter to be in the discretion of the

25  Attorney General or the Secretary of Homeland Security . . . ."

26  8 U.S.C. § 1252(a)(2)(B)(ii).

27  Section 1184(p)(6) clearly grants defendants discretion

28  to adjudicate requests for work authorization.  See Gonzalez v.

Cissna, 364 F. Supp. 579, 584 (E.D.N.C. 2019); Uranga, 2020 WL 5763633, at *7-*10; Ramires, 2020 WL 6146393, at *4.  The statute states that "[t]he Secretary may grant work authorization" to a petitioner with a pending, bona fide application, but nothing in the statute indicates that the Secretary is required to evaluate whether a petitioner's application is bona fide or whether work authorization is warranted prior to the petitioner being placed on the waitlist.  See 8 U.S.C. § 1184(p)(6) (emphasis added).  The use of the word "may" is a clear grant of discretion to USCIS.  See Uranga, 2020 WL 5763633, at *8; Maine Cmty. Health Options v. United States, 140 S. Ct. 1308, 1320 (2020) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); Rastelli v. Warden Metro. Corr. Ctr., 782 F.2d 17, 23 (2d Cir. 1986) ("The use of . . . 'may review' instead of 'shall review' suggests a discretionary rather than mandatory process.").  The statute does not mandate that USCIS grant work authorization to pending, bona fide applicants, or even direct USCIS to promulgate regulations interpreting what makes an application "bona fide" or otherwise implementing the statute.  See Ramires, 2020 WL 6146393 at *4.

By contrast, section 1184(p) does place a clear duty on USCIS to grant employment authorization to petitioners who receive a U visa.  See 8 U.S.C. § 1184(p)(3)(B) ("the Attorney General shall, during the period those aliens are in lawful temporary resident status under that subsection, provide the aliens with employment authorization." (emphasis added)).  Additionally, section 1184(p)(6) itself utilizes mandatory language multiple times when addressing certain extensions of U

visas:

> The authorized period of status of an alien
> as a nonimmigrant under section
> 1101(a)(15)(U) of this title <u>shall</u> be for a
> period of not more than 4 years, but <u>shall</u>
> be extended upon certification from a . . .
> law enforcement official, prosecutor, judge,
> or other . . .  authority investigating or
> prosecuting criminal activity described in
> section 1101(a)(15)(U)(iii) of this title
> that the alien's presence in the United
> States is required to assist in the
> investigation or prosecution of such
> criminal activity . . . .  Such alien's
> nonimmigrant status <u>shall</u> be extended beyond
> the 4-year period authorized under this
> section if the alien is eligible for relief
> under section 1255(m) of this title and is
> unable to obtain such relief because
> regulations have not been issued to
> implement such section and <u>shall</u> be extended
> during the pendency of an application for
> adjustment of status under section 1255(m)
> of this title.

8 U.S.C. § 1184(p)(6) (emphasis added).

Only in the last sentence of section 1184(p)(6) did Congress state that the "Secretary <u>may</u> grant work authorization to any alien who has a pending, bona fide application . . . ." <u>Id.</u>  In other words, Congress knew the words to choose if had intended to require the Secretary to adjudicate every U visa application to determine if it was bona fide and, thus, whether work authorization should issue.  See <u>Lindley v. FDIC</u>, 733 F.3d 1043, 1056 (11th Cir. 2013) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.").

Accordingly, the court concludes that section 1184(p)(6) places the decision whether to award work authorization to petitioners who have not yet been placed on the regulatory waitlist within USCIS' discretion.  Because the APA

1   and the INA preclude judicial review of discretionary decisions

2   by USCIS, the court lacks subject matter jurisdiction over

3   plaintiffs' claim.  See 5 U.S.C. § 701(a); 8 U.S.C.

4   § 1252(a)(2)(B)(ii).  The First Cause of Action of plaintiffs'

5   FAC (FAC ¶¶ 61-85) will therefore be dismissed.

6           B.   **Second Cause of Action**

7           The version of 8 C.F.R. § 274a.13(d) that was in effect

8   at the time plaintiffs filed their petitions for a U visa stated

9   "USCIS will adjudicate the application within 90 days from the

10  date of receipt of the application" and "[f]ailure to complete

11  the adjudication within 90 days will result in the grant of an

12  employment authorization document for a period not to exceed 240

13  days."  8 C.F.R. § 274a.13(d) (2016).  In other words, USCIS was

14  required to adjudicate a request for employment authorization

15  within 90 days of receiving a petitioner's application, and if it

16  failed to do so, it was required to issue the petitioner interim

17  employment authorization documents for a period no greater than

18  240 days.  See id.

19          Under the current version of the regulation, however,

20  USCIS is no longer required to adjudicate applications for work

21  authorization within 90 days and is not authorized to issue

22  interim employment authorization documents.  See 8 C.F.R. §

23  274a.13(d).  Defendants contend that the court should apply the

24  current version of the regulation, and that under this version,

25  the court does not have jurisdiction to review plaintiff's claim

26  because USCIS is under no legal obligation to act.  See Norton,

27  542 U.S. at 64 ("[A] claim under § 706(1) can proceed only where

28  a plaintiff asserts that an agency failed to take a discrete

                                    12

1   agency action that it is <u>required</u> to take.").

2           To determine whether subject matter jurisdiction over

3   this claim exists, then, the court must first determine which

4   version of 8 C.F.R. § 274a.13(d) to apply.  Because the 2016

5   version of the regulation was in effect when plaintiffs filed

6   their petitions, and was still in effect when the 90-day period

7   expired and the issuance of interim employment authorization

8   documents was mandatory, the court concludes that it applies, for

9   the reasons discussed below.

10          "The principle that the legal effect of conduct should

11  ordinarily be assessed under the law that existed when the

12  conduct took place has timeless and universal human appeal."

13  <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 855

14  (1990).  "Elementary considerations of fairness dictate that

15  individuals should have an opportunity to know what the law is

16  and to conform their conduct accordingly; settled expectations

17  should not be lightly disrupted."  <u>Landgraf v. USI Film Prods.</u>,

18  511 U.S. 244, 265 (1994).  "Retroactivity is not favored in the

19  law."  <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988).

20  "Congressional enactments and administrative rules will

21  [therefore] not be construed to have retroactive effect unless

22  their language requires this result."  <u>Id.</u>  "By the same

23  principle, a statutory grant of legislative rulemaking authority

24  will not, as a general matter, be understood to encompass the

25  power to promulgate retroactive rules unless that power is

26  conveyed by Congress in express terms."  <u>Id.</u>

27          To determine whether a statute or regulation may be

28  retroactively applied, courts generally employ a two-step

framework.  <u>Landgraf</u>, 511 U.S. at 265.  First, the court looks to whether Congress expressly provided that the statute be applied retroactively.  <u>Id.</u> at 270.  If "the statute contains no such express command," a court moves on to the second step, which examines whether the law has a "retroactive effect."  <u>Id.</u> at 280.  This analysis requires an assessment of "the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event," as well as "whether the new provision attaches new legal consequences to events completed before its enactment."  <u>Id.</u> at 270.  A statute is impermissibly retroactive if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past."  <u>Id.</u> at 269 (internal quotation marks and citations omitted).

To determine whether rights have "vested," the court looks to whether the person has "availed himself of them or [taken] action that enhanced their significance to him in particular."  <u>Fernandez-Vargas v. Gonzales</u>, 548 U.S. 30, 44 n.10 (2006).  Any action taken must "elevate [the expectation] above the level of hope," and therefore actions that do little to substantially further the individual's expectation of relief are insufficient to create a vested right.  <u>Id.</u>

Here, there is no provision in the immigration statutes that explicitly authorizes USCIS to promulgate retroactive rules, and defendants do not contend otherwise.  (<u>See</u> Defs.' Mot. to Dismiss at 19-20.)  The court will therefore move on to the second step of the <u>Landgraf</u> analysis and ask whether applying the

14

amended regulation would take away "vested rights [that were] acquired under existing laws." Vartelas v. Holder, 566 U.S. 257, 266 (2012).

Plaintiffs applied for work authorization on October 3, 2016, when they submitted their Form I-918 petition for a U visa. See 72 Fed. Reg. 53,014, 53,029 (Sep. 17, 2007) (indicating that the Form I-918 petition "serves the dual purpose of requesting U nonimmigrant status and . . . employment authorization").  At the time, they had the right to have the request adjudicated within 90 days, or USCIS was required to issue interim employment authorization documents.  8 C.F.R. § 274a.13(d) (2016). Plaintiffs availed themselves of this right by submitting their petition for a U visa and work authorization.  See Fernandez-Vargas, 548 U.S. at 44 n.10; Uranga, 2020 WL 5763633, at *15 (holding that applying amended version of 8 C.F.R. § 274a.13(d) would interfere with right of plaintiff that vested when he applied for work authorization); Rodriguez v. Nielson, No. 16-CV-7092 (MKB), 2018 WL 4783977, at *18 (E.D.N.Y. Sept. 30, 2018) (same).

Contrary to defendants' assertions (see Defs.' Reply at 6-8 (Docket No. 19)), plaintiffs took action in reliance on the prior version of the regulation that elevated their expectation of having their work authorization requests adjudicated "above the level of hope."  See Fernandez-Vargas, 548 U.S. at 44 n.10. Specifically, plaintiffs volunteered their identities--along with their status as undocumented aliens--to local and federal law enforcement agencies and agreed to cooperate in ongoing law enforcement investigations with the expectation that they would

1  be placed on the waitlist for a U visa and receive a

2  determination as to their requests for work authorization within

3  90 days, as provided by the regulation in force at the time.

4  (See FAC ¶¶ 44, 48-49, 87.)

5        While plaintiffs could have applied for work

6  authorization through other channels, the regulation in place at

7  the time provided that if they applied in conjunction with their

8  application for a U visa, they would have their requests

9  adjudicated within 90 days or, if USCIS did not make a

10 determination within that time period, they would receive interim

11 employment authorization documents for up to 240 days.  See 8

12 C.F.R. § 274a.13(d) (2016).  Because the regulation's language

13 was that of a guarantee (i.e., USCIS "will adjudicate the

14 application within 90 days," and "failure to complete the

15 adjudication within 90 days will result" in the issuance of

16 interim employment documents), filing a request for a work

17 authorization along with a U visa elevated plaintiff's

18 expectations "above the level of hope."  See id.

19        Defendants cite to Durable Mfg. Co. v. U.S. Dep't of

20 Labor, 578 F.3d 497, 503 (7th Cir. 2009), and Labojewski v.

21 Gonzales, 407 F.3d 814, 822 (7th Cir. 2005), to argue that the

22 filing of an application for an administrative benefit, including

23 a visa petition, does not create a vested right in that benefit.

24 The court finds those cases distinguishable, however.  In

25 Durable, the Seventh Circuit held that a revised regulation did

26 not have an impermissibly retroactive effect with regard to two

27 applications for labor certifications that were approved after

28 the new regulation took effect.  See Durable, 578 F.3d 497, 503-

504.  The court reasoned that merely filing an application for a labor certification did not give the applicants a vested right to a labor certification because the agency would still have to make a final determination as to the applicant's qualification for the certification.  See id.  "[No] new legal consequences would affect the application as a result of the amended" regulation because the agency would still had to evaluate the merits of the application.  See id.

The court in Durable also held that the new regulation did not have an impermissibly retroactive effect as to thirteen labor certification applications that had been approved before the new regulation went into effect, because the prior regulation had only given applicants the right to an "indefinite" labor certification, meaning their duration was not fixed and the agency could revoke or extinguish the validity of their certifications at any time.  See id.  The applicants could not expect their certifications to be permanent and therefore did not have a vested right in them.  Id.

The right guaranteed by 8 C.F.R. § 274a.13(d) (2016) differs from the one at issue in Durable because it specifically guaranteed plaintiffs the right to have their application for work authorization adjudicated within 90 days.  The regulation stated that "USCIS will adjudicate the application within 90 days from the date of receipt of the application."  8 C.F.R. § 274a.13(d) (2016).  This 90-day period had completely elapsed prior to enactment of the revised regulation, so unlike the applicants in Durable, no "final determination" remained to be made before adjudication of their applications.  See Durable, 578

17

1    F.3d 497, 503-504.  Because the prior regulation also guaranteed

2    that "[f]ailure to complete the adjudication within 90 days will

3    result in the grant of an employment authorization document for a

4    period not to exceed 240 days,"  8 C.F.R. § 274a.13(d) (2016),

5    plaintiffs had a more legitimate expectation in receiving interim

6    employment authorization documents than the applicants in

7    Durable.  See Durable, 578 F.3d 497, 503-504.

8         Similarly, Labojewski is distinguishable because it

9    dealt with a situation in which the applicant had not yet applied

10   for the benefit at issue prior to the change in law.  See

11   Labojewski, 407 F.3d at 822.  There, the Seventh Circuit held

12   that a change in law did not have an impermissibly retroactive

13   effect merely because the applicants had satisfied a prerequisite

14   for obtaining a change in immigration status (re-entering the

15   country) prior to the change in law.  See id.  Because the

16   applicants had failed to actually apply for the change in status

17   before the law changed, they did not have a "reasonable reliance"

18   on being eligible under the old criteria.  Id.  Labojewski thus

19   does not apply here because plaintiffs had already successfully

20   applied for work authorization and had their 90-day period vest

21   under the regulation prior to its revision.  See 8 C.F.R. §

22   274a.13(d) (2016).

23        Defendants' reliance on INS v. St. Cyr, 533 U.S. 289,

24   321 (2001), and Mejia v. Gonzales, 499 F.3d 991, 997 (9th Cir.

25   2007), is also misplaced.  Defendants argue that these cases

26   stand for the proposition that a regulation is impermissibly

27   retroactive only if it "completely vitiates" a plaintiff's

28   rights, as opposed to merely "adversely affecting" those rights,

such as by delaying the plaintiff's ability to obtain what he is owed.  (See Defs.' Reply at 18-19.)  Defendants argue that the amended version of 8 C.F.R. § 274a.13(d) did not interfere with a vested right because it did not completely vitiate plaintiffs' right to obtain work authorization, it only deferred the issuance of work authorization to the time at which their U visa application was adjudicated.  (See id.)  However, this argument mischaracterizes the nature of the right plaintiffs had under 8 C.F.R. § 274a.13(d) as it existed when they petitioned for work authorization.  As discussed above, 8 C.F.R. § 274a.13(d) (2016) guaranteed plaintiffs the right to have their application for work authorization adjudicated within 90 days, not the right to work authorization itself.  If USCIS could not adjudicate the plaintiffs' requests within 90 days, the regulation guaranteed plaintiffs the right to interim employment authorization documents.  Id.  Thus, the 2017 revisions did "completely vitiate" plaintiffs' rights--under current regulations, plaintiffs no longer have the right to have their applications for work authorization adjudicated within 90 days, and they no longer have a right to interim employment authorization documents.  See 8 C.F.R. § 274a.13(d).

Thus, when plaintiffs applied for work authorization, they had a vested right to adjudication of their requests within 90 days, and by January 1, 2017, 90 days after USCIS received plaintiffs' petitions, they had a vested right to interim work authorization documents.  See Fernandez-Vargas, 548 U.S. at 44 n.10.  Because application of the revised rule--effective January 17, 2017--would strip plaintiffs of their vested rights, the

court finds that application of the revised version of the regulation would "have a retroactive effect" that Congress did not authorize.  See Uranga, 2020 WL 5763633, at *15; Rodriguez, 2018 WL 4783977, at *18.  The version of 8 C.F.R. § 274a.13(d) in effect when plaintiffs filed their petitions for U visas musst therefore be applied.  See Landgraf, 511 U.S. at 265.

In their reply, defendants argue for the first time that, even under the prior version of 8 C.F.R. § 274a.13(d), the court lacks subject matter jurisdiction over plaintiffs' claim because those regulations do not trigger a mandatory duty to act until defendants make a threshold determination as to whether a petitioner is eligible for work authorization.  (See Defs.' Reply at 5.)  Not only is this argument waived because it was raised for the first time in defendants' reply brief, see Bazuaye v. INS, 79 F.3d 118, 120 (9th Cir. 1996), the court finds the argument unpersuasive.

Defendants' argument runs counter to the plain language of 8 C.F.R. § 274a.13(d) (2016), which unequivocally states: "USCIS will adjudicate the application within 90 days from the date of receipt of the application," not within 90 days of USCIS performing a threshold determination of a petitioner's eligibility for the underlying benefit.  Indeed, in the Final Rule repealing the prior version of 8 C.F.R. § 274a.13(d), DHS stated that it was eliminating the 90-day deadline and interim employment authorization document provisions because "it believed that the 90-day time frame was 'outdated and no longer reflect[ed] the operational realities of the Department' and it 'constrain[ed] DHS' ability to maintain necessary levels of

1   security when application receipt volumes suddenly increase.'"

2   <u>Uranga</u>, 2020 WL 5763633, at *16 (quoting 80 Fed. Reg. 81,900,

3   81,929).  Such statements would not have been necessary if the

4   90-day clock only began running once defendants had evaluated the

5   merits of a petitioner's claim.

6        Thus, USCIS was required to adjudicate plaintiffs'

7   requests for work authorization within 90 days of receiving their

8   Form I-918 petition or, if it could not do so, issue interim

9   employment authorization documents for up to 240 days.  <u>See</u> 8

10  C.F.R. § 274a.13(d) (2016).  Because this decision was legally

11  required, and not left up USCIS' discretion, the court has

12  subject matter jurisdiction to review plaintiffs' claim under the

13  APA.  Defendants' motion to dismiss the claim presented in

14  plaintiffs' Second Cause of Action will therefore be denied.  <u>See</u>

15  5 U.S.C. § 706(1), § 701(a)(2); <u>Norton</u>, 542 U.S. at 64.

16       C.   **Third Cause of Action**

17       Plaintiffs' claim of unreasonable delay in issuing a

18  waitlist determination for their U visa petitions rests on USCIS

19  regulations, which state: "[a]ll eligible petitioners who, due

20  solely to the cap, are not granted U-1 nonimmigrant status must

21  be placed on a waiting list and receive written notice of such

22  placement."  8 U.S.C. § 214.14(d)(2).  Although USCIS regulations

23  do not establish a deadline or timeframe by which the agency must

24  make a determination regarding waitlist placement, the APA

25  provides that, "within a reasonable time, each agency shall

26  proceed to conclude a matter presented to it."  5 U.S.C. §

27  555(b).  Plaintiffs also argue that reviewing courts are required

28  to "compel agency action unlawfully withheld or unreasonably

1  delayed" under the APA.  See 5 U.S.C. § 706(1).

2          Defendants argue that plaintiffs' claim must fail

3  because "the mere passage of time is insufficient to sustain a

4  claim of unreasonable delay."  (See id. (citing Mashpee Wampanoag

5  Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir.

6  2003).)  In other words, defendants argue that plaintiffs' FAC

7  does not "plausibly suggest[]" an entitlement to relief under the

8  APA because it merely alleges that plaintiffs' U visa

9  applications had been pending for 47 months at the time they

10 filed the FAC.  See Twombly, 550 U.S. at 557.

11         To determine whether an agency's delay is reasonable

12 under the APA, the court will have to balance six so-called

13 "TRAC" factors, established in Telecommunications Research and

14 Action Center v. Federal Communications Commission, 750 F.2d 70

15 (D.C. Cir. 1984) ("TRAC"):

16         (1) the time agencies take to make decisions
           must be governed by a "rule of reason";

17         (2) where Congress has provided a timetable
18         or other indication of the speed with which
           it expects the agency to proceed in the
19         enabling statute, that statutory scheme may
           supply the content for this rule of reason;

20         (3) delays that might be reasonable in the
           sphere of economic regulation are less
21         tolerable when human health and welfare are
           at stake;

22         (4) the court should consider the effect of
           expediting delayed action on agency
23         activities of a higher or competing
           priority;

24         (5) the court should also take into account
25         the nature and extent of the interests
           prejudiced by delay; and

26         (6) the court need not "find any impropriety
           lurking behind agency lassitude in order to
27         hold that agency action is 'unreasonably
           delayed.'"

28
                                22

1  Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001) (quoting

2  TRAC, 750 F.2d at 80).

3         Plaintiffs' complaint alleges facts that, if true,

4  would tend to show defendant's delay was unreasonable under each

5  of the TRAC factors.  See id.  For instance, the FAC alleges that

6  USCIS' waitlist decisions are not governed by a "rule of reason,"

7  TRAC, 750 F.2d at 80, because USCIS "systematically prioritizes

8  later filed petitions over earlier filed petitions," contrary to

9  the agency's assertions that that it makes waitlist decisions on

10  a "first in, first out" basis.  (See FAC ¶¶ 108-109.)  Plaintiffs

11  further allege that, even if USCIS' waitlist decisions are

12  governed by a rule of reason, USCIS has ignored that rule in this

13  case by processing U visa waitlist decisions for applicants that

14  filed their applications after plaintiffs.  (See FAC ¶¶ 115-116.)

15         The FAC also addresses the "nature and extent of the

16  interests prejudiced by the delay."  TRAC, 750 F.2d at 80.

17  Plaintiffs allege that they are unable to acquire deferred

18  action, work authorization, a social security number, or

19  government-approved identification (i.e., a "Real ID"), and that

20  they are in jeopardy of being physically removed from the United

21  States.  See FAC ¶¶ 122-26.  Because the court will have to

22  employ the TRAC framework when it evaluates the merits of

23  plaintiffs' claim that defendant's delay was unreasonable,

24  plaintiffs' allegations go beyond merely asserting that they have

25  been waiting too long and are sufficient to state "a claim to

26  relief that is plausible on its face."  See Twombly, 550 U.S. at

27  557.

28         Defendants argue that the court should find under the

23

1  TRAC factors that their delay in processing plaintiffs' petitions

2  was reasonable as a matter of law.  (See Defs.' Mot. to Dismiss

3  at 10-15.)  They contend that USCIS' practice of processing U

4  visa petitions in the order they are received, with some

5  petitions being expedited subject to criteria set forth by the

6  agency, constitutes a "rule of reason" under TRAC that is

7  reasonable under the six-factor test.  (See id. (citing TRAC, 750

8  F.2d at 80).)  Without asking the court to take judicial notice

9  of any information outside the scope of plaintiffs' FAC,

10 defendants cite to a number of reports, USCIS statements, and

11 USCIS webpages to argue that delays in the processing of U visa

12 petitions for waitlist eligibility result primarily from the

13 overall number of petitions filed, which have increased almost

14 every year since 2009, not wrongful conduct on the part of the

15 agency.  (See id. at 7, 11.)

16      The court is unable to find that defendant's delay was

17 reasonable at the motion to dismiss stage.  "Resolution of a

18 claim of unreasonable delay is ordinarily a complicated and

19 nuanced task requiring consideration of the particular facts and

20 circumstances before the court."  Mashpee, 336 F.3d at 1100; see

21 also Yu v. Brown, 36 F. Supp. 2d 922, 935 (D.N.M. 1999) ("What

22 constitutes an unreasonable delay in the context of immigration

23 applications depends to a great extent on the facts of the

24 particular case.").  Adopting defendant's argument would require

25 the court to look beyond the face of plaintiffs' complaint and,

26 without the benefit of the administrative record, evaluate facts

27 concerning USCIS' general practices, whether those practices were

28 followed in this case, and the number of U visa petitions filed

over the past several years.  See <u>Sprewell v. Golden State</u>

<u>Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001) ("Review [of a motion

to dismiss under Rule 12(b)(6)] is limited to the contents of the

complaint.").

While some district courts have found that evaluating

the reasonableness of USCIS' delay in issuing U visa waitlist

determinations under <u>TRAC</u> is appropriate at the motion to dismiss

stage, <u>see, e.g.</u>, <u>Uranga v. U.S. Citizenship & Immigration</u>

<u>Services</u>, No. 20-0521 ABJ, 2020 WL 5763633, at *11-14 (D.D.C.

Sep. 28, 2020), this court agrees with other district courts that

have found that it would be "'premature' at the motion to dismiss

stage 'to consider the exact sources of the delay to determine

whether the delay was actually unreasonable under the

circumstances.'"  See <u>Gelfer v. Chertoff</u>, No. C06-06724 WHA, 2007

WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (finding it

"premature" at the motion to dismiss stage "to consider the exact

sources of the delay to determine whether the delay was actually

unreasonable under the circumstances"); <u>Ramires v. Wolf</u>, No.

1:20-cv-203 KWR SMV, 2020 WL 6146393, at *3 (D.N.M. Oct. 20,

2020) (quoting <u>Gelfer</u>, 2007 WL 902382, at *2); <u>Patel v. Cissna</u>,

400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019) (""[T]he Court is not

prepared to hold on a motion to dismiss for failure to state a

claim that the three-year delay in reviewing [plaintiff's] U visa

petitions for placement on the waiting list is reasonable as a

matter of law."); <u>M.J.L. v. McAleenan</u>, 420 F. Supp. 3d 588, 598

(W.D. Tex. 2019) ("the Court finds that it is premature to

address these factors at the motion to dismiss stage and before

discovery has been completed.")

1    Defendants finally argue that the FAC fails to state a

2  claim under the APA because the APA reserves matters of agency

3  management priorities to the agency's discretion, thereby

4  precluding judicial review.  (See Defs.' Mot. to Dismiss at 12

5  (citing 5 U.S.C. § 701; Heckler v. Chaney, 470 U.S. 821, 831-32

6  (1985)).  According to defendants, USCIS' determination as to the

7  order in which it will evaluate outstanding U visa petitions

8  "reflect[s] the agency's determination as to the best allocation

9  of its resources and calls upon its particular expertise and,

10 therefore, is a matter committed to its discretion."  (See id.)

11 Defendants argue that granting plaintiffs' requested relief would

12 interfere with the agency's management priorities by "putting the

13 petitioner at the head of the queue . . . simply mov[ing] all

14 others back one space and produce no net gain."  (See id. at 14

15 (quoting Xiaobin Xu v. Nielsen, No. 18-cv-2048 (BMC), 2018 WL

16 2451202, at *2 (E.D.N.Y. May 31, 2018) (quoting Mashpee, 336 F.3d

17 at 1100)).)  This, defendants argue, would result in "unwarranted

18 line-skipping" for plaintiffs with the means to hire counsel and

19 would delay adjudication of other U visa petitions filed earlier

20 in time.  (See id.)

21    It is true that courts should generally defer to

22 agencies' assessments of where their resources should be devoted,

23 absent constitutional or legal restraints.  See Heckler, 470 U.S.

24 at 831-32 (the "agency is far better equipped than the courts to

25 deal with the many variables involved in the proper ordering of

26 priorities").  However, the APA commands courts to "compel agency

27 action unlawfully withheld or unreasonably delayed" when the

28 agency is under a mandatory legal duty to act.  See 5 U.S.C.

26

1  § 706(1), § 701(a).  Here, USCIS was required by regulation to

2  place "[a]ll eligible petitioners who, due solely to the cap, are

3  not granted U-1 nonimmigrant status . . . on a waiting list."  8

4  U.S.C. § 214.14(d)(2).  Because plaintiffs claim that USCIS has

5  unreasonably delayed in complying with this mandate, the APA

6  provides for judicial review.  See 5 U.S.C. § 706(1), § 701(a).

7  Concerns that other petitioners for U visas may be prejudiced by

8  granting plaintiffs' requested relief because of "line skipping"

9  do not preclude judicial review of plaintiffs' claims.  The court

10 must evaluate plaintiffs' claim based on the facts of the case

11 before it.

12        To the extent that defendants argue "line skipping" or

13 agency resource concerns are relevant to the reasonableness of

14 the agency's delay as to plaintiffs under the fourth TRAC factor,

15 which requires the court to consider "the effect of expediting

16 delayed action of agency activities of a higher or competing

17 priority," the court can take these concerns into account in its

18 ultimate evaluation of all the TRAC factors.  See TRAC, 750 F.2d

19 at 80.  Dismissal at the motion to dismiss stage is therefore not

20 warranted based solely on that consideration.

21        In sum, the Third Cause of Action of plaintiff's FAC

22 adequately states a claim of unreasonable delay.  See Twombly,

23 550 U.S. at 557.  Defendants' motion to dismiss that claim

24 pursuant to Fed. R. Civ. P. 12(b)(6) must accordingly be denied.

25        D.   **Fourth Cause of Action**

26        Finally, defendants argue that plaintiffs' FOIA claims-

27 -contained in their Fourth Cause of Action--are moot because

28 defendants have fully responded to plaintiffs' FOIA requests.

1   (See Defs.' Mot. to Dismiss at 21.)  "As with other types of

2   civil cases, a suit under the FOIA can be rendered moot by events

3   subsequent to its filing."  Yonemoto v. Dep't of Veterans

4   Affairs, 686 F.3d 681, 689 (9th Cir. 2012), overruled on other

5   grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836

6   F.3d 987 (9th Cir. 2016).  "The production of all nonexempt

7   material, 'however belatedly,' moots FOIA claims."  Papa v.

8   United States, 281 F.3d 1004, 1013 (9th Cir. 2002) (quoting Perry

9   v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982)).

10        Plaintiff Lujano Gonzales concedes that her FOIA claim

11  is moot because defendant produced all nonexempt material in its

12  possession prior to litigation.  (See Pls.' Opp'n at 3.)  The

13  court will therefore dismiss plaintiff Lujano Gonzales' FOIA

14  claim for lack of subject matter jurisdiction.  See Fed. R. Civ.

15  P. 12(b)(1).

16        Plaintiff Salazar Jaramillo concedes that defendant has

17  adequately responded to his FOIA request since the filing of the

18  FAC.  (See Pls.' Opp'n at 3.)  However, plaintiff argues that his

19  claim is not moot because he is still entitled to costs and

20  attorney fees under FOIA.  See 5 U.S.C. § 552(a)(4)(E)(i).

21        "Claims for attorneys' fees ancillary to the case

22  survive independently under the court's equitable jurisdiction,

23  and may be heard even though the underlying case has become

24  moot."  Cammermeyer v. Perry, 97 F.3d 1235, 1238 (9th Cir. 1996)

25  (quoting Williams v. Alioto, 625 F.2d 845, 848 (9th Cir. 1980)).

26  "The existence of an attorneys' fees claim thus does not

27  resuscitate an otherwise moot controversy."  Id. (citing Diamond

28  v. Charles, 476 U.S. 54, 70-71 (1985)).

1    Since plaintiff does not contest defendants'

2  representation that they have produced all nonexempt material in

3  their possession in response to plaintiff's FOIA request, and

4  plaintiff Salazar Jaramillo's claim for attorney's fees cannot

5  resuscitate his underlying FOIA claim, see Cammermeyer, 97 F.3d

6  at 1238, plaintiff's FOIA claim is moot and will be dismissed for

7  lack of subject matter jurisdiction.  See Papa v. United States,

8  281 F.3d at 1013; Fed. R. Civ. P. 12(b)(1).  Defendants' motion

9  to dismiss the Fourth Cause of Action of plaintiffs' FAC will

10  therefore be granted.  (FAC ¶¶ 156-64.)

11    IT IS THEREFORE ORDERED that defendant's motion to

12  dismiss be, and the same hereby is, GRANTED as to the First and

13  Fourth Causes of Action and DENIED as to Second and Third Causes

14  of Action of the FAC.  The First Cause of Action and the Fourth

15  Cause of Action of the First Amended Complaint are hereby

16  DISMISSED.[1]

17  Dated:  November 10, 2020

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

27    [1]   The court expresses no opinion at this time as to
whether plaintiffs are entitled to attorney's fees based on their
28  FOIA claims.